# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

JULIE GUERRIERI,

                Plaintiff,

vs.                                           DECISION AND ORDER
                                                              06-CV-6581 CJS

TOWN OF GENEVA AND TOWN BOARD
SUPERVISOR, MARY LUCKERN, in her
official and individual capacity,

                Defendants.

_____

## APPEARANCES

        For the Plaintiff:                Jason Little, Esq.
                                                    Christina Agola, Esq.
                                                          2100 First Federal Plaza
                                                          28 East Main Street
                                                          Rochester, NY 14614
                                                          Tel: (585) 262-3320

        For the Defendants:           Elizabeth A. Wolford, Esq.
                                                          The Wolford Law Firm LLP
                                                          16 East Main Street
                                                          600 Reynolds Arcade Building
                                                          Rochester, NY 14614
                                                          Tel: (585) 325-8005

## INTRODUCTION

This case is before the Court on Defendants' motion for summary judgment seeking dismissal of the remaining two causes of action in the amended complaint. For the reasons stated below, the Court grants the motion and dismisses the complaint.

## BACKGROUND

Plaintiff commenced her lawsuit by filing an initial complaint in this Court on November 17, 2006. Subsequently, on January 4, 2007, she filed a First Amended Complaint ("Amended Complaint") raising six causes of action. Following the close of discovery on July 1, 2008, Defendants filed the pending motion for summary judgment and supporting documents.

In a declaration signed on September 15, 2008, six-hundred and twenty days after filing the First Amended Complaint, Plaintiff's counsel, Christina A. Agola, Esq., withdrew the following claims: Sexual Harassment in violation of 42 U.S.C. § 1983 against the Town of Geneva; Sexual Harassment in violation of Title VII against the Town of Geneva; Sexual Retaliation in violation of the New York Human Rights Law against the Town of Geneva; Retaliation and Post-termination retaliation under New York Human Rights Law against the Town of Geneva and its Supervisor, Mary Luckern, in her official and individual capacities. (Agola Decl., at 1-2.) Though she does not identify the claims withdrawn by their cause of action numbers in the amended complaint, the Court interpreted Ms. Agola's declaration to mean she is withdrawing the First, Third, Fourth, and Sixth causes of action in the amended complaint filed on January 4, 2007, and that interpretation was confirmed by Ms. Agola's associate, Jason Little, Esq., who argued the motion on Ms. Agola's behalf.

Consequently, Defendant's summary judgment application is directed at Plaintiff's two remaining causes of action – her second cause of action alleging retaliation in violation of the First Amendment and her fifth cause of action alleging sexual discrimination in violation of Title VII.

The following background information is taken from Defendants' Local Rule 56.1 Statement of Facts, and Plaintiff's response thereto, and is limited to the remaining two causes of action. Plaintiff served as the Town Clerk of Greece, an elected position, from 1995 until her term expired on December 31, 2005, after she did not win reelection. Throughout her tenure, Plaintiff was involved in interpersonal or political conflicts with other town employees. In June 2005, it was discovered that the then-Town Attorney, Carleton Brownell, had been viewing pornography on his computer at the town hall. In July 2005, approximately a month after Mr. Brownell's conduct was discovered, he resigned.

In March 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) complaining that she had been subjected to a hostile work environment while Town Clerk. She then commenced this Title VII and Human Rights Law action complaining she was subjected to a hostile work environment, and more specifically that Mr. Brownell had sexually harassed her by invading her personal space and staring at her breasts on an unspecified number of occasions.

Following her first deposition, Plaintiff "supplemented her discovery to reflect" her appointed position as Registrar of Vital Statistics, Records Access Officer and Records Management Officer. (Pl.'s Counter-Statement of Facts, at 4.) Plaintiff asserts in her response to the motion that her appointed positions within the Town qualify her for coverage under Title VII.

Pursuant to Court order, Plaintiff was deposed a second time with respect to these appointed positions and in that second deposition, Plaintiff made the following statements. In addition to being elected as Town Clerk, she was also appointed as Registrar of Vital Statistics, Records Access Officer, and Records Management Officer. These appointments were made by the Town Board in 1995. With respect to these appointed positions, Plaintiff understood that she was supposed to work closely with the Town Board and was answerable to them. In addition to her compensation as Town Clerk, Plaintiff received compensation of $686.00 with respect to the registrar position, but did not receive any additional compensation for the positions of Records Management Officer and Records Access Officer.

At her second deposition, Plaintiff further asserted that she had not referenced the appointed positions in her prior pleadings and interrogatory responses because she felt that they were intertwined with her Town Clerk position. (Plaintiff supplemental deposition, at 11.) She characterized the relationship between her elected position as Town Clerk and the appointed positions as "intermingled...intertwined into one...[and] co-mingled." (Plaintiff's supplemental deposition, at 12-13.) She also stated that it was "impossible to distinguish" the appointed position from her duties as Town Clerk. (*Id.*, at 30.) According to Plaintiff, all her positions with the Town were "all meshed together" and "intertwined." (*Id.*) She worked in the same office, used the same forms, and used the same files for all of her positions with the Town. She did not consider the Town or any Town official to be her supervisor with respect to the appointed positions. (*Id.*, at 30-33.) Instead, she considered the State of New York to be her supervisor with respect to the Registrar of Vital Statistics

position and regarded the "Chief Fiscal Officer"[1] also as a supervisor. (*Id*., at 32-33.) She did not consider herself to have any supervisor with respect to her appointed positions of Record Access Officer and Records Management Officer. (*Id*., at 33.)

In addition, with respect to the appointed positions, Plaintiff supervised her own support staff, had no set schedule, and never received a performance review related to the appointed positions. As the Registrar of Vital Statistics, Plaintiff handled birth certificates, death certificates, burial certificates, and genealogy requests. (*Id*., at 12, 32.) As the Records Access Officer, Plaintiff handled Freedom of Information Law requests for Town records, and as Records Management Officer, Plaintiff managed Town records. (*Id*., at 13.)

At her first deposition, Plaintiff testified that her sexual-harassment claims were based on conduct allegedly committed by Mr. Brownell while he served as the Town Attorney at the same time she was Town Clerk. Plaintiff claimed that the alleged harassment consisted of Mr. Brownell intimidating her with "unwelcome stares," having an "intimidating demeanor and stature," "hovering over" Plaintiff while reading legal books, and "invading" Plaintiff's personal space. (Guerrieri Dep., at 45.)

Plaintiff stated she perceived his behavior as sexual harassment because, on certain unspecified occasions, Mr. Brownell was looking at her breasts while engaging in this behavior. (Plaintiff Dep., at 40.) Plaintiff stated, at her deposition, that Mr. Brownell never said anything to her of a sexually derogatory nature, never touched her when he allegedly invaded her personal space, never touched her in an inappropriate manner, never sexually propositioned her, and never requested sexual favors from her. (Guerrieri Dep., at 68.) The

---

[1] The Chief Fiscal Officer mentioned in Plaintiff's testimony is not further identified as either a Town or State position.

only specific instance Plaintiff could recall regarding Mr. Brownell acting inappropriately occurred during May 2005 when Plaintiff and he were discussing the requirements for the meeting minutes of a May 18, 2005, Town Board meeting. During this encounter, Plaintiff claims that Mr. Brownell stood over her with an "intimidating stance and stature," while "hovering over" her and reading a law book. (Guerrieri Dep., 84.) Plaintiff said that she felt "intimidated" and "stressed." (Guerrieri Dep., at 84.) She said she felt Mr. Brownell was "invading her personal area," but admitted that he did not touch or threaten her. She claimed, however, that he glanced at her breasts for "a matter of seconds." (Guerrieri Dep., at 90, 92.)

Plaintiff never actually observed Mr. Brownell viewing pornography at Town Hall. (Guerrieri Dep., at 73.) She first became aware that he was allegedly viewing pornography when her husband received a manila envelope in the mail containing photographs of what Plaintiff believed was Mr. Brownell in his office at Town Hall viewing pornography. (Guerrieri Dep., at 69.) Until her husband received the photographs, Plaintiff had no idea that Mr. Brownell may have been viewing pornography in his office.

Mr. Brownell made comments in a newspaper article published on July 13, 2005, after he left his position. Plaintiff claims that the comments which she said implied that she and her husband were vicious people (Guerrieri Dep. at 81), were in retaliation for her complaints about him, specifically, "[t]hat I wasn't going to work with him alone in the office." (Guerrieri Dep., at 101.) Plaintiff further explained that she believed when Mr. Brownell made his comments in the newspaper, "it wasn't in retaliation, [but] to shift some type of blame from him viewing pornography, to us." (*Id.*, at 102.)

Plaintiff also related an incident in September when she "walked in [to] town hall after lunch, Barbara Vincent was the receptionist. When I walked in, she picked up the phone and she said to Lori [Peck]: Lori, that person is here to see you." She continued with her story:

> I looked around. There is [sic] nobody there. I went into my office, and I have a recorder, an audio tape recorder in my office, and I mean, things like this have happened so much. I had that feeling something's up, something's going to happen. So I went in and pushed the audio tape on and went about my work in the office just conducting whatever business I had to do. Shortly thereafter, you could hear them all coming down the hall and singing something like, celebration, celebration and December 35th [sic], celebration, blah-blah blah.... As an outcome of that audio tape, they were harassing me, but yet, they wanted me arrested for taping them.

(Guerrieri Dep., at 104-05.) Plaintiff states that employees at the Town Hall "wanted [her] arrested to taping them. So, that's when they got the Sheriff's Department involved...." (Guerrieri Dep., at 105.) Plaintiff was in fact read her rights by a deputy sheriff over the phone. (*Id.*, at 105)

Asked to describe any further incidents of harassment, Plaintiff related that she was in the town hall in January or February of 2006 to assist the tax collector, Helen Garlick, and when there, Lori Naegele, the Town Clerk, knocked on the door while Plaintiff was sitting at the computer. She continued her story:

> And I have heard that at that time she called up Mike Vassello, who is a board member, and told him, Julie's on the computer. She is not supposed to be. And I guess sometime that day also she called up the Sheriff's Department for deputy—I think it was Bennett, Dan Bennett. Anyways, I think it's easy to find out, and she told him that I took a computer program out of the computer because after helping Helen that day, I went home and the following morning this deputy called my house, wanted to talk to me.

(Guerrieri Dep., at 106.) Plaintiff stated she was being accused of taking a Williamson Law Program from the computer, which she denied.

Plaintiff also related another incident. She could not remember the date, but testified that Nancy Dox yelled and screamed at her, and lunged at her, in the receptionist area. (*Id*., at 107.)

## STANDARDS OF LAW

*Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Of course, it is well–settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is

in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, the general rule holds and a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### *Title VII Employee*

As the Second Circuit observed in *Kern v. City of Rochester*, 93 F.3d 38 (2d Cir. 1996):

> Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a). The term "employer" is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." *Tadros v. Coleman*, 717 F. Supp. 996, 1002 (S.D.N.Y.1989), *aff'd*, 898 F.2d 10 (2d Cir.), *cert. denied*, 498 U.S. 869 (1990).

*Kern*, 93 F.3d at 44-45. Title VII defines an employee for purposes of the statute as follows:

> (f) The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of

the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C.§ 2000e(f) (1991). In *Butler v. New York State Dep't. of Law*, 211 F.3d 739 (2000), the Second Circuit was faced with the question of whether Butler, an Assistant Attorney General appointed by the elected Attorney General, was an appointee on the policy making level. The court wrote:

> We have already noted that Butler was appointed by an elected official. Butler concedes that as an AAG she could have been called upon to work closely with the AG. Finally, as Deputy Bureau Chief, Butler's supervisory authority placed her at a higher level of responsibility than most other AAGs. These facts lead us to conclude that Butler falls within the policymaker exception to Title VII….We hold…that Butler, who as Deputy Bureau Chief was in a higher position than other AAGs and could be required to work closely with the AG, was an appointee on the policymaking level under Title VII.

*Butler*, 211 F.3d at 749.

### *Hostile Work Environment*

The Second Circuit addressed the elements of a hostile work environment claim under Title VII in *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2006) as follows:

> "When the workplace is permeated with discriminatory intimidation, ridicule, and insult [based on, *inter alia*, sex] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris* [*v. Forklift Systems, Inc.*], 510 U.S. [17] at 21 (internal quotation marks and citations omitted); *see also Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002) (same). A jury must be able to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse. *Id.*; *see also Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

*Schiano*, 445 F.3d at 604-05 (footnote omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc*, 510 U.S. 17, 21 (1993).

### *First Amendment Retaliation*

In order to prove a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, Plaintiff must show that: "'(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

## ANALYSIS

### *Title VII Claims (Fifth Cause of Action)*

Defendants contend that Plaintiff is not covered by Title VII, since she was at all times alleged in her complaint an elected official, and an appointee at the policy making level. 42 U.S.C. § 2000e(f) (1991). Plaintiff counters that she was not appointed by the town supervisor, and her Registrar position was not a policy level position, thus, she is not exempt from coverage under Title VII. In her memorandum of law, Plaintiff cites to the *Butler* case, but does not further elaborate her legal argument on this point.

In her supplemental deposition, Plaintiff conceded that she was appointed by the Town Board[2] to the position of Town Clerk in February 1995, then was elected to that position in November 1995. Further, she testified that she was appointed by the town board

---

[2] The members of the Town Board are elected. New York Town Law § 20.

to the positions of Registrar, Records Access Officer and Records Management Officer. (Guerrieri Suppl. Dep., at 6-9.) In response to the question, "[i]s it fair to state that in your capacity of these three positions that you are supposed to work closely with the Town Board?" Plaintiff responded, "Yeah." (*Id.*, at 20.) In a memorandum Plaintiff prepared for the town supervisor regarding burial certificates, she wrote, "I should be involved in any preliminary or ongoing discussions concerning these issues and implementation and policy." (*Id.*, at 28.) Plaintiff explained at her supplemental deposition that it was her understanding she was supposed to be involved in the implementation of policy in the Town. (*Id.*, at 29.)

The Court will apply the more focused six-factor test from *Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440 (2003) to determine whether Plaintiff was an employee within the meaning of Title VII. In *Clackamas*, the Supreme Court referenced the guidelines in the EEOC Compliance Manual:

> With respect to the broad question, the guidelines list 16 factors—taken from *Darden*, 503 U.S., at 323-324—that may be relevant to "whether the employer controls the means and manner of the worker's work performance." EEOC Compliance Manual § 605:0008, and n. 71. The guidelines list six factors to be considered in answering the narrower question, which they frame as "whether the individual acts independently and participates in managing the organization, or whether the individual is subject to the organization's control." Id., § 605:0009.
>
> We are persuaded by the EEOC's focus on the common-law touchstone of control, see *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and specifically by its submission that each of the following six factors is relevant to the inquiry whether a shareholder-director is an employee:
>
> "Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> "Whether and, if so, to what extent the organization supervises the individual's work

> "Whether the individual reports to someone higher in the organization
>
> "Whether and, if so, to what extent the individual is able to influence the organization
>
> "Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> "Whether the individual shares in the profits, losses, and liabilities of the organization." EEOC Compliance Manual § 605:0009.

*Clackamas*, 538 U.S. at 449-50. Taken in conjunction with the clear exclusion of elected and appointed officials contained in Title VII's definition of employee, 42 U.S.C. § 2000e(f), *see Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 n.10 (11th Cir. 1993) (definition of "employee" under Title VII excludes elected and appointed officials), the Court determines that Defendant has shown Plaintiff will be unable to prove she was an employee in any of her various capacities. Plaintiff's own testimony establishes that *she* controlled the manner and means by which she completed her duties, the most important of the six factors. *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000). She also established that her appointed positions were "intermingled...intertwined into one...[and] co-mingled." (Plaintiff's supplemental deposition, at 12-13.) She also stated that it was "impossible to distinguish" the appointed position from her duties as Town Clerk. (*Id.*, at 30.) In light of the statutory exemption, and the facts before the Court on summary judgment, it is clear that Plaintiff was not an employee under Title VII, and those claims must be dismissed.

***First Amendment Retaliation Claims (Second Cause of Action)***

In her Second cause of action, Plaintiff claims that she was subjected to retaliatory harassment for complaining of sexual harassment to the Town Board Supervisor. (Am.

Compl. ¶ 55; Guerrieri Dep., at 44, 189.) However, the Court disagrees. Plaintiff has not established by evidentiary proof in admissible form that the town had an official policy or custom that caused her to be subjected to the denial of a constitutional right. In fact, she testified that the town had an official policy of non-discrimination and that sexual harassment was unacceptable. (Guerrieri Dep., at 124, 185-88.) She also testified that the town personnel manual had a procedure for addressing complaints of sexual harassment. (*Id.*, at 188-89.) Finally, the town conducted two investigations in response to Plaintiff's complaints and accommodated her request not to have to work with the town attorney. (Luckern Aff. ¶¶ 8, 10; Ex. 10, Report of Mr. Garvey (Feb. 11, 2002); Guerrieri Dep., at 77 ("Q. In other words, you objected to meeting with Mr. Brownell alone, and Ms. Luckern did not, in fact, require you to meet with him alone? A. Right.").)

The Second Circuit addressed the question of what constitutes protected speech in *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008). In that case, the court wrote:

> Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) "whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

*Ruotolo*, 514 F.3d at 188 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).Here, Plaintiff's speech did not speak on a matter of public concern. "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999)). Like the situation in *Ruotolo,* Plaintiff's "lawsuit sought to redress [her] personal grievances. It did not seek to advance a public purpose." *Id.*; *see also Connick v. Meyers*, 461 U.S. 138, 149 (1983) ("To presume that all matters which

transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case."). Accordingly, her First Amendment retaliation claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 31) is granted, and the case is dismissed.

It Is So Ordered.

DATED:   February 5, 2009
         Rochester, NY            ENTER.


                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge